## No. 22377.

### John M. Calerich v. The Cudahy Packing Company, a Maine Corporation.
(460 P.2d 801)

Decided November 3, 1969.    Rehearing denied November 24, 1969.

BRENMAN, CIANCIO, ROSSMAN & BAUM, EDMUND L. EPSTEIN, MARTIN ZEROBNICK, for plaintiff in error.

WOOD, RIS & HAMES, EUGENE S. HAMES, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE GROVES.

THE parties appear here in the same order as in the trial court, and will be referred to as plaintiff and defendant. This was an action for damages arising out of a back injury sustained by plaintiff when he was struck by a door on defendant's premises. At the conclusion of the presentation of the plaintiff's case, the court granted a motion for dismissal on the ground that the plaintiff was contributorily negligent as a matter of law. We have concluded that the case should have been submitted to the jury. Accordingly, we reverse.

Plaintiff was a wholesale distributor of meats, delivering them to restaurant and retail store customers along a route which included Dumont, Dillon, Frisco, Brecken-

ridge, Alma, Fairplay, Jefferson, Bailey and Tiny Town. He purchased a substantial part of the meat from the defendant, receiving it at defendant's Denver meat packing plant.

Defendant's dock at which the plaintiff received the meat is a rather long one. It is 30 feet in depth, *i.e.*, from the wall of the building to the edge of the dock against which trucks are backed for loading. It was customary for plaintiffs and other of defendant's customers to submit a meat order by telephone and to call for it within a few hours or the next day. The meat ordered by a particular customer would be placed upon a skid (a platform resting on short metal legs). While the order was being prepared the skid would be on the dock against or near the wall and near double doors leading into the packing house. Each of these doors were large, being about 11 feet in height, 2½ feet in width and about 9 inches in thickness. They opened outward. Their exteriors were covered with metal sheeting and they had no windows. At about 3½ feet from the bottom of each door there were protruding metal fixtures used to open and lock the doors.

After an order had been filled and the truck was against the dock to receive it, the skid with the meat thereon would be moved with motorized equipment to the rear of the truck by defendant's employees. The person taking delivery and one of defendant's checkers would then "check" the order, *i.e.*, determine that the articles ordered were on the skid. Then the person taking delivery would place the meat in his truck.

On the day in question, the plaintiff backed his truck against the dock to receive an order previously given by him by telephone. He went to the defendant's office to pay his account. He returned to the dock and was looking for his order when one of defendant's checkers (Popish) directed him to the skid containing his order. This skid was against the wall and quite close to the door. Plaintiff testified: that the checker called him

over to the skid; that the checker had the sheet containing the items of the order; and that the two of them moved around the loaded skid, checking the items that were there against the sheet. At a moment when plaintiff was facing the skid another of defendant's checkers opened the door from the inside and it — and presumably its metal attachments — struck plaintiff in his lower back. If plaintiff had not been there, the door would have struck the skid and its contents.

In discharging the jury the trial court made the following statement:

"Assuming that the evidence might have shown some negligence on the part of Cudahy Packing Company in the manner in which they permitted their dock to be operated, it is clear from all the testimony that Mr. Calerich knew the conditions perfectly well — as well as they. He had been there many times before. He knew that door could come open at any time, and that the person inside coming out couldn't see him; and yet he deliberately and voluntarily turned his back on the door and went on about his business, knowing that if there was somebody in there who happened to come out at that particular minute, he would be hurt. In my judgment, and in accordance with what I think the law is, that precludes the plaintiff from recovering any damages from the Cudahy Packing Company, so the Court will enter an order of dismissal."

■ Colorado is committed to the rule that, in spite of knowledge of a danger, justifiable distraction or forgetfulness may excuse a party injured thereby. *Jasper v. City and County of Denver,* 144 Colo. 43, 354 P.2d 1028; *Mathias v. Denver Union Terminal Railway Company,* 137 Colo. 224, 323 P.2d 624 and *Mountain States Telephone & Telegraph Co. v. Sanger,* 87 Colo. 369, 287 P. 866. See Annot., 74 A.L.R.2d 950.

■■ There was testimony to the effect that customarily, while the patron was in the office paying his account, the defendant's employees with power equip-

ment would move the skid containing his merchandise to the rear of his truck, and there it would be checked. The plaintiff testified:

"And got out of my truck, went from my truck to the office and paid my bill, and come out, and looked to see if I could see my meat. It usually is waiting for me back of my truck, and I was looking for it, and I didn't see it there, so I started looking around for it, and it was Mr. Popish said, 'John, I have your order here.' "

Popish and plaintiff commenced checking the skid contents in its location without Popish first moving the skid or having it moved away from the potential danger of the door. The plaintiff necessarily had to participate in the checking. Popish kept the check sheet, calling out the items thereon; and the plaintiff, while attempting to locate them on the skid, was moving around it. Plaintiff could not move the skid — only the defendant's employees with the power device could do that. The fact that the order had not yet been completely filled does not change the fact that defendant's checker may have placed plaintiff in a situation of checking the order at a possibly hazardous location not customarily so used. To participate, plaintiff had to move around the skid, of course be facing it, and at times to have his back to the door.

From this a prudent person might conclude that the plaintiff was thereby reasonably distracted. We are far from saying as a matter of law that plaintiff was free from contributory negligence. We do say that there was enough evidence of possible justifiable distraction to submit the question of contributory negligence — and the other issues of fact — to the jury.

Judgment reversed with the direction that the order of dismissal be vacated and a new trial be had.

MR. JUSTICE DAY, MR. JUSTICE PRINGLE and MR. JUSTICE LEE concur.