533 P.2d 53 (1975)
B. Zoe CONNELLY, Plaintiff-Appellant,
v.
REDMAN DEVELOPMENT CORPORATION, Defendant-Appellee.
No. 74-163.
Colorado Court of Appeals, Div. II.
January 7, 1975.
Rehearing Denied January 21, 1975.
*54 Agee, Fann, Ewing & Goldstein, Peter A. Goldstein, Colorado Springs, for plaintiff-appellant.
Zarlengo, Mott & Zarlengo, Donald E. Cordova, Denver, for defendant-appellee.
Not Selected for Official Publication.
ENOCH, Judge.
This is a tort action for the recovery of damages for personal injury. At the close of plaintiff's evidence in a trial to a jury, the court granted defendant's motion for a directed verdict. Plaintiff appeals. We reverse.
In determining the validity of the court's ruling, we must consider the evidence in a light most favorable to the plaintiff. See Carsell v. Edwards, 165 Colo. 335, 439 P.2d 33.
On October 29, 1972, plaintiff, B. Zoe Connelly, drove to her daughter's apartment in the northeast area of Colorado Springs. The apartment building and adjoining parking area is owned by defendant, Redman Development Corporation. The daughter had lived in this apartment for approximately a month and this was plaintiff's first visit. The occasion was planned to coordinate with a visit by a Mrs. Morris and her four-month-old baby. Plaintiff arrived about 5:00 p. m., parked her car in the parking lot, and walked to the apartment building. Plaintiff left about 5:30 p. m. and returned to her car and was preparing to leave when she observed what appeared to her to be a human figure lying on the walk in the parking area not far from her car. Plaintiff left her car and started down the walk in the direction of the figure. It was dark and the parking area was not lighted. Over the noise of a strong wind, plaintiff heard the crying of a baby. Plaintiff quickened her pace, but instead of continuing on the clearly visible cement walkway to a T intersection where she could have turned right on the walkway to the figure, plaintiff took a more direct route, leaving the walkway and stepping into the parking area. When plaintiff stepped into the blacktopped parking area, she fell and broke a bone in her foot. The figure on the walk turned out to be Mrs. Morris, with her baby, who had left the apartment moments after plaintiff. Mrs. Morris had also fallen when she cut across the parking surface from one walkway to another.
A subsequent examination of the area revealed that the walkways were made of light colored concrete and were elevated five to six inches above the blacktop surface of the parking area. Where plaintiff and Mrs. Morris fell, the defendant had provided for drainage of surface water under the walkway at the T intersection and had caused to be constructed a drainage ditch parallel and adjacent to part of the walkway. The ditch was about 17 inches at its deepest point. The area was not lighted, there was no cover over the ditch and there were no signs or markers indicating the presence of the ditch.

I.
Plaintiff contends that the trial court erred in ruling as a matter of law that the drainage ditch did not constitute an unreasonable risk of harm, thereby removing the *55 question of defendant's negligence from consideration by the jury. We agree.
A property owner owes a duty of reasonable care to persons who come upon the property. Mile High Fence Co. v. Radovich, 175 Colo. 537, 489 P.2d 308. What constitutes reasonable care is a question for the jury except where the facts are undisputed and reasonable minds could draw but one inference from them. Hilzer v. MacDonald, 169 Colo. 230, 454 P.2d 928; Randall v. Nasbarg, 28 Colo.App. 147, 470 P.2d 893. Though defendant provided walkways for drivers to walk to and from the parking area, it is obvious that drivers would have to walk in the black surface parking area to have access to their cars. Whether the defendant had exercised its duty of reasonable care in the construction and maintenance of the drainage ditch within the parking area was a question for the jury to determine.

II.
We also agree with plaintiff's contention that the court erred in ruling as a matter of law that plaintiff was guilty of contributory negligence. Only in a case where the facts are undisputed and only one inference can reasonably be drawn from them, should the trial court take from the jury the question of plaintiff's negligence. Fowler Real Estate Co. v. Ranke, Colo., 507 P.2d 854; Eisenhart v. Loveland Skiing Corp., Colo.App., 517 P.2d 466. Prior to the accident plaintiff had walked from her car parked in the blacktop area and had returned without incident. Since this was her first visit to the premises there was no cause for her to know that cutting across from one walkway to another would involve anything more than a step of five or six inches from the walkway to the parking area.
Even had plaintiff known of the greater drop-off at the ditch, justifiable distraction or forgetfulness might excuse her. See Calerich v. Cudahy Packing Co., 170 Colo. 222, 460 P.2d 801; Jasper v. City & County of Denver, 144 Colo. 43, 354 P.2d 1028. For this reason, it would also be proper for the jury to consider the reasonableness of plaintiff's conduct in cutting from one walkway to another in response to the cry of a baby and the sight of a figure lying on the walk.
The trial court found that by choosing to leave the safety of the walkway for a more hazardous route across the blacktop surface the plaintiff was negligent. The fact that plaintiff had an alternate safe route if she had remained on the walkway is a fact to be considered by the jury in determining whether her conduct was negligent, but that alone is not enough to establish her negligence as a matter of law. King Soopers, Inc. v. Mitchell, 140 Colo. 119, 342 P.2d 1006; Eisenhart v. Loveland Skiing Corp., supra.

III.
The plaintiff further contends that the court erred in ruling as a matter of law that the rescue doctrine was not applicable to the facts of this case. We agree with the trial court.
The rescue doctrine as it relates to the alleged negligence of the rescuer is defined in Colorado Jury Instructions 9:6 and 9:20. To warrant the application of the doctrine it must appear that someone was in imminent peril, requiring immediate action to avoid physical harm. See Maloney v. Jussel, 125 Colo. 125, 241 P.2d 862. Under the facts of this case there is no evidence that Mrs. Morris or her child were in imminent peril. Though they may have been in need of assistance, there is no evidence to justify a finding that they were in a type of dangerous situation from which they were in need of immediate rescue.
The judgment is reversed and the cause is remanded with directions to grant a new trial consistent with this opinion.
BERMAN and VanCISE, JJ., concur.